```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
LUCYNA KOBOS
```

                     Plaintiff,          **MEMORANDUM AND ORDER**
                                                                              2:15-cv-5573 (DRH)(SIL)

```
        - against –

TARGET CORPORATION and AMY
MARTINEZ,

                        Defendants.
-------------------------------------------------------X
```

**APPEARANCES**

**LAW OFFICES OF JOEL M. GLUCK**
Attorney for Plaintiff
305 Broadway Suite 1427
New York, NY 10007
By:    Joel M. Gluck, Esq.

**SEYFARTH SHAW LLP**
Attorneys for Defendant Target
620 Eighth Ave.
New York, NY 10018
By:    Scott Roblan Rabe, Esq.
         Alnisa Shakirah Bell, Esq.

**HURLEY, Senior District Judge:**

**INTRODUCTION**

      Plaintiff Lucyna Kobos ("Plaintiff") brought this action against Target Corporation ("Target") and Amy Martinez ("Martinez," collectively, "Defendants") for age discrimination under the Age Discrimination in Employment Act ("ADEA"), discrimination on the basis of national origin under Title VII of the Civil Rights Act of 1964, 42 U.S.C. ("Title VII"), retaliation, and discrimination constituting a hostile work environment. (Compl. [DE 1] ¶ 1.)

Presently before the Court is Target's motion for summary judgment pursuant to Fed. R. Civ. P. 56. As explained in more detail below, Target's motion for summary judgment is granted as to all claims.

## BACKGROUND

The following facts are taken from the Parties' Rule 56.1 Statements, and are uncontested unless otherwise stated. Notably, significant portions of Plaintiff's Rule 56.1 Statement are inadmissible due to counsel's failure to comply with the requirement that "[e]ach statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting and statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." Local Civ. R. 56.1(d). Plaintiff's Rule 56.1 Statement is largely, though not entirely, devoid of citations for facts such as Plaintiff's age and whether Defendant Martinez told Target to fire Plaintiff. (*See* P.'s R. 56.1 Stmt. [DE 30-8] ¶¶ a, ff.) Consequently, the Court will not consider any facts in Plaintiff's Rule 56.1 Statement that are not supported by admissible evidence. This decision incorporates relevant facts from Plaintiff's Rule 56.1 Statement for which citations are provided.

Plaintiff is a woman of Polish nationality who is 62-years old. (Def.'s R. 56.1 Stmt. [DE 30-4] ¶ 1.) Target asserts that Plaintiff was hired at the store in Riverhead, New York in November 2007, whereas Plaintiff claims she was hired in March 2005 (*Id.* ¶ 2; P.'s R. 56.1 Stmt. [DE 30-8] ¶ d). No explanation is offered as to this discrepancy, however, the two years is not material to Plaintiff's claims. Plaintiff was hired as a "Team Member" ("TM"), an entry-level position assigned to different store departments. (Def.'s R. 56.1 Stmt. ¶ 2.) TMs report to "Executive Team Leaders" ("ETL"), who in turn report to "Store Team Leaders" ("STL"). (*Id.*) Starting in 2009 or 2010, Plaintiff started working in the "Softlines Department" as a sales floor

TM, which involved "working in the fitting rooms, picking up items, and putting away items throughout the Store, among other duties."  (*Id.* ¶¶ 5–6.)  At the time Plaintiff joined the Softlines Department, there were approximately 20 or more other TMs, at least five of whom were older than Plaintiff.  (*Id.* ¶¶ 8–9.)

Shortly thereafter, Defendant Martinez became the ETL for the Softlines Department, and Plaintiff's supervisor.  (*Id.* ¶ 10.)  Plaintiff alleges that in March 2014, Defendant Martinez harassed her by saying out loud in the cafeteria that "she's crazy, how can she walk to work by [sic] snow like this" in reference to Plaintiff walking to work in a snowstorm.  (*Id.* ¶ 40.)  Plaintiff was upset by this and advised the STL, John Avelli, about the "crazy" comment.  (*Id.* ¶ 44.)  Mr. Avelli told Plaintiff that he would speak to Defendant Martinez.  (*Id.* ¶ 46.)  Mr. Avelli "coached" Defendant Martinez regarding "making sarcastic comments and the impact such comments might have on others."  (*Id.*)  One week later, Defendant Martinez met with Plaintiff and told her that she did not mean to insult her.  (*Id.* ¶ 48.)  Plaintiff claims that after she complained to Mr. Avelli, Defendant Martinez retaliated against her by cutting her hours and telling her not to discuss her financial problems with co-workers.  (P.'s R. 56.1 Stmt. ¶ dd.)

Plaintiff claims that Defendant Martinez favored younger team members and gave Plaintiff "more work with less time to perform it."  (*Id.* ¶ bb.)  For example, at one point Defendant Martinez allegedly "assigned Plaintiff the job of unloading and reshelving three and a half carts of shoes expecting her to be finished in half an hour[.]"  (*Id.* ¶ z.)  Defendant Target states that while Plaintiff claims that she received too much work, she did not complete the unloading task before she left for the day and she "did not suffer any discipline or adverse action for failing to finish putting away the items."  (Def.'s R. 56.1 Stmt. ¶¶ 32–33.)  Plaintiff also

argues that Defendant Martinez "humiliated her on another occasion in front of a coworker Daro, by showing her how to pick up an item from the floor[.]" (P.'s R. 56.1 Stmt. ¶ cc.)

On May 13, 2014, Plaintiff complained to Target's Integrity Hotline that Defendant Martinez had changed and reduced her schedule after Plaintiff complained about the "crazy" comment. (*Id.* ¶ dd.; Def.'s R. 56.1 Stmt. 54.) Plaintiff also stated that Defendant Martinez had increased other employees' hours and scheduled Plaintiff to work at night, but did not schedule other employees to work as late. (*Id.*) Plaintiff stated that she believed Defendant Martinez made the "crazy" comment in reference to Plaintiff's economic status. (*Id.*) Target promptly investigated the claim. On May 15, 2014, the ETL of Human Resources, Jen Burns, met with Plaintiff regarding her complaint. (*Id.* ¶ 57.) Based on this investigation, Defendant Target concluded that there was no "evidence to substantiate Plaintiff's allegations that [Defendant] Martinez had harassed her or that she had received fewer hours from [Defendant] Martinez." (*Id.* ¶ 62.) Mr. Avelli spoke with Defendant Martinez "to ensure scheduling processes were being followed and Team Members were being scheduled consistent with Team Member availability." (*Id.* ¶ 63.)

In addition to her complaint about not getting enough hours, Plaintiff also claims that she was assigned more work than other employees during the hours she worked. Plaintiff alleges that Defendant gave her "extra work" by asking her to pick up items in the store." (*Id.* ¶ 26.) According to Target, "Plaintiff admits that picking up Store items was part of her responsibilities as a Softlines Team Member and part of her responsibility while working in the fitting room" and that "all of the Team Members working with Plaintiff at the Store were required to pick up items in the Store and put away items from the fitting rooms as part of their responsibilities during their shifts." (*Id.* ¶¶ 28–29.)

Target alleges that on May 27, 2014, Plaintiff began a medical leave of absence, and that she "voluntarily chose not to return to Target after her medical leave of absence expired." (*Id.* ¶¶ 12–13.) Target claims that Plaintiff was terminated based on her failure to return from her leave. (*Id.* ¶ 14.) Plaintiff does not offer an alternative explanation for why she was fired, and in fact adopts Target's statement of fact on the issue. (P.'s R. 56.1 Stmt. at 2 (adopting Def.'s R. 56.1 Stmt. ¶ 14).)

## DISCUSSION

I.   *Legal Standard for Summary Judgment*

Summary judgment pursuant to Rule 56 is appropriate only where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. SYS. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. &*

*Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (*quoting Anderson*, 477 U.S. at 252) (internal quotation marks omitted), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (internal quotation marks omitted), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court considering a summary judgment motion must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing Anderson, 477 U.S. at 252), because the "evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). "[W]here the nonmovant will bear the ultimate burden of proof at trial on an issue, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Id*. at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.'" *Id.* at 211 (citing *Matsushita*, 475 U.S. at 587).

II. *Plaintiff's Claims*

Plaintiff sets forth four causes of action in the complaint. First, Plaintiff alleges age discrimination under the ADEA. (Compl. ¶ 15.) Second, Plaintiff alleges discrimination on the basis of her nationality under Title VII of the Civil Rights Act. (*Id.* ¶ 19.). Third, Plaintiff alleges age and nationality discrimination, as well as retaliation for a protected activity, under

New York State Human Right Law ("NYSHRL") Executive Law § 296 et seq. (*Id.* ¶ 22.) Finally, Plaintiff alleges a claim for a hostile work environment under Title VII. (*Id.* ¶ 26.) Each of these claims will be discussed in turn below.

### III. *Discrimination Claims – The First and Second Causes of Action*

#### a. Legal Standard

While discrimination claims under the ADEA and Title VII are generally fact-specific inquiries, "summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Airlines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). Age discrimination cases are analyzed under the three-part, burden shifting framework set out by the Supreme Court in *McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *Id.* To prevail on a discrimination claim, a plaintiff must first establish a prima facie case of discrimination. *McDonnel Douglas*, 411 U.S. at 802. Once the plaintiff has made out a *prima facie* case, "the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.* Examples of legitimate, nondiscriminatory reasons are poor performance, being the subject of a complaint, unprofessional conduct, and causing personnel issues. *See, e.g.*, *Gorzynski v. Jetblue Airways Corp., v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010). If the employer is able to do so, then the burden shifts back to the plaintiff to prove that the employer's stated reasons are pretext and that discrimination was the true reason for the adverse employment action. *See id.*; *see also Abdu-Brisson*, 238 F.3d at 466.

To establish a prima facie case of discrimination, a plaintiff must show that (1) she is within the protected class, (2) she was qualified for the position, (3) she experienced adverse employment action, and (4) such action occurred under circumstances giving rise to an inference

of discrimination. *Testa v. CareFusion*, 2018 WL 1611378, at *5 (E.D.N.Y. Apr. 3, 2018) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *see also Gorzynski*, 596 F.3d at 107 (2d Cir. 2010) (citing *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000). Plaintiff's burden in establishing a prima facie case of discrimination "is not a heavy one." *Gorzynski*, 596 F.3d at 107.

      b.  The Motion for Summary Judgment is Granted as to the First Cause of Action: The ADEA Claim

The ADEA provides that it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1). This protection covers employees who are at least 40 years old. *Id.* at § 631(a).

Plaintiff's claim for age discrimination under the ADEA is analyzed under the same *McDonnell Douglas* three-step burden-shifting framework as other discrimination claims. *See Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 185 (2009). Additionally, the Supreme Court has held that to bring a claim for age discrimination under the ADEA, a plaintiff must prove, "by a preponderance of the evidence, that age was the 'but for' cause of the challenged adverse employment action." *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 176–77 (2009).

Applying the foregoing principles to the facts at bar, the Court finds that Plaintiff has not made out a prima facie case of age discrimination. Looking at the four-part test, Plaintiff easily meets the first two elements: (1) she is within the protected class as she is over 40 years of age; and (2) she was qualified for the position as she had performed it for a number of years. (*See* Def.'s R. 56.1 Stmt. ¶¶ 3, 4, 14, 98.)

Under the third element, Plaintiff fails to allege an adverse employment action. Plaintiff's counsel serially lists adverse employment actions, including: "disparaging comments [and] excessive work" and the instance when Defendant Martinez forbade Plaintiff from asking coworkers for extra hours; (P.'s Mem. in Opp. [DE 30-6] at 5 (hereinafter "Mem. in Opp.").) Counsel also argues that the adverse employment action consisted of Defendant Martinez's comments, "her insistence that Kobos not discuss her financial problems with coworkers and her order that Plaintiff not borrow time from coworkers," and Defendant Martinez's favoring "younger co-workers in the duties assigned to them." (*Id.* at 7–8.) Despite multiple attempts to articulate an adverse employment action, Plaintiff has not done so here.

"An adverse employment action is a materially adverse change in the terms and conditions of employment." *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008). "Such action must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Sethi v. Narod*, 12 F. Supp. 3d 505, 523 (E.D.N.Y. 2014) (quoting *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (internal quotation marks omitted.)). Asking Plaintiff to restrain from discussing her personal issues at work is not an adverse employment action. Nor does forbidding Plaintiff from asking for extra hours raise to the level of a "materially adverse change in the terms and conditions of employment," especially given that Plaintiff continued to work more or the same number of hours as her coworkers. (*See* P.'s R. 56.1 Stmt. at ¶¶ 82, 96; *see also* Target's Mem. in Supp. [DE 30-5] at 16 (hereinafter "Mem. in Supp.".) Furthermore, "comments" do not constitute an adverse employment action when the only comments alleged occurred on an extremely limited number of occasions and do not relate in any discernible way to Plaintiff's age. Finally, favoring younger employees by assigning them different duties does not constitute an adverse employment action when the only evidence of this

in the record was a request to unload shoes—a request which Plaintiff did not complete and for which Plaintiff was not fired or disciplined. (*See* Def.'s R. 56.1 Stmt. ¶ 33.) Notably, Plaintiff's counsel does not argue that Plaintiff's termination was an adverse employment action, perhaps because there is no clear connection between Plaintiff's termination and her age. Whatever the reason, the Court finds that Plaintiff has failed to meet her minimal burden to establish a prima facie case of age discrimination, as she did not properly allege an adverse employment action.

Even if Plaintiff had properly alleged an adverse employment action, she would likely fail on the fourth element of a prima facie case of discrimination as there is almost no evidence in the record giving rise to an inference of age discrimination. The instances of age discrimination that Plaintiff provides in her Rule 56.1 Statement generally do not include citations. (*See, e.g.*, P.'s R. 56.1 Stmt. ¶ y (claiming that Defendant Martinez "accommodated younger workers, particularly those in school by not giving them more work and additional shifts," but not citing to any admissible evidence in violation of Local Civ. R. 56.1(d)).) Moreover, Plaintiff does not cite to any evidence in support of her assertion that Defendant Martinez assigned Plaintiff "extra work at the end of her shift and did not treat other young employees the same." (*Id.* ¶ y.) Most importantly, the statements made by Defendant Martinez bear no obvious relationship to Plaintiff's age. For example, when Martinez allegedly called Plaintiff "crazy" for walking to work in a snowstorm, she did not say anything about Plaintiff's age, and this comment does not reference or relate to Plaintiff's age. Additionally, when Martinez "humiliated" Plaintiff by showing her how to pick up an item from the floor, this action once again had no clear connection to Plaintiff's age. Based on the foregoing, Target is entitled to summary judgment on the ADEA claim based on Plaintiff'sf failure to establish a prima facie case of age discrimination.

> c. The Motion for Summary Judgment is Granted as to the Second Cause of Action: The Title VII Claim

Turning to Plaintiff's second claim, she alleges discrimination on the basis of her nationality in violation of Title VII. Title VII provides, in relevant part, that "[i]t shall be unlawful" for an employer to take an adverse action against an employee because of that employee's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). Title VII claims are also analyzed under the *McDonnell Douglas* burden-shifting framework. *See Varno v. Canfield*, 664 Fed. Appx. 63, 65 (2d Cir. 2016).

Applying the foregoing principles to the facts at bar, the Court finds that Plaintiff has once again failed to make out a prima facie case for national origin discrimination. Looking at the four-part test, Plaintiff has sufficiently plead the first two elements. First, she is within the protected class, being of Polish origin. *See Gymrek v. Metropolitan Life Ins. Co.*, 2007 WL 2403205, at *5 (E.D.N.Y. Aug. 20, 2007) ("It is undisputed that [Plaintiff's Polish] national origin puts her in a protected class[.]"); (*Id.* ¶ 3.) Second, she was presumptively qualified for the position as she had performed it for a number of years. (*Id.* ¶ 4.)

On the third element, Plaintiff confronts the same issue discussed above; namely, Plaintiff's counsel fails to allege an adverse employment action that consists of "a materially adverse change in the terms and conditions of employment." *Mathirampuzha*, 548 F.3d at 78. As counsel discusses the Title VII claim and the ADEA claim simultaneously—providing the same evidence and authority for both—the exact same analysis discussed above applies here. The Court, therefore, incorporates that discussion by reference and finds that Plaintiff has failed to make out a prima facie case of discrimination on the basis of national origin,

Once again, even if counsel had sufficiently alleged an adverse employment action, Plaintiff would likely fail on the fourth element as there is even less evidence in the record of

national origin discrimination. As discussed above, Defendant Martinez's comments regarding Plaintiff being "crazy" do not relate in any discernible way to Plaintiff's national origin. The same is true of Defendant Martinez's request that Plaintiff unload three carts of shoes, and of Defendant Martinez's allegedly offensive demonstration of how to pick up an item off the floor—neither of these instances demonstrate any discrimination based on Plaintiff's Polish origin. Therefore, summary judgment is granted as to Plaintiff's second claim under Title VII for failure to establish a prima facie case of national origin discrimination.

IV. NYSHRL Claim – The Third Cause of Action

    a. Legal Standard

        i. Age and National Origin Discrimination Claims

Discrimination claims under the New York State Human Rights Law ("NYSHRL") are analyzed under the same *McDonnell Douglas* burden-shifting framework as discrimination claims brought under the ADEA and Title VII. *Powell v. Delta Airlines*, 145 F. Supp. 3d 189, 198 (E.D.N.Y. 2015) (citing *Brannigan v. Bd. of Educ. Of Levittown Union Free Sc. Dist.*, 18 A.D. 3d 787, 796 (2005) ("The elements of an age discrimination claim under the New York State Human Rights Law are essentially the same and courts apply the same standards for analyzing age discrimination claims under both statutes.")); *see also Haymattieesar v. JP Morgan Chase Bank N.A.*, 2018 WL 2075421, at *6 (E.D.N.Y. May 3, 2018) ("Plaintiff's state and federal claims [under Title VII and the NYSHRL] must be analyzed under the familiar three-step burden-shifting framework set forth in *Mcdonnell Douglas*[.]"); *Conceocion v. City of New York*, 2016 WL 396099, at *18 (S.D.N.Y. Jan 26, 2016) (analyzing Title VII, ADEA, and NYSHRL claims under *McDonnell Douglas*).

ii. Retaliation Claim

As part of her NYSHRL claim, Plaintiff also alleges retaliation. The NYSHRL provides that "[i]t shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article." N.Y. Exec. Law § 296(7). Here, the relevant "practices forbidden" are discrimination on the basis of age and national origin. *Id.* at § 296(1).

A retaliation claim under the NYSHRL is also analyzed under the *McDonnell Douglas* burden shifting framework. *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 220 (E.D.N.Y. 2014) (citing *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013) ("The burden-shifting framework laid out in *McDonnell Douglas* . . . governs retaliation claims under both Title VII and the NYSHRL"). In order to make out a prima facie case for retaliation under the NYSHRL, Plaintiff must show that (1) she participated in a protected activity; (2) the employer was aware of Plaintiff's participation in this activity; (3) the employer took adverse action against the employee; and (4) a causal connection exists between the protected activity and the adverse action. *Harold Flores v. Entergy Nuclear Operations, Inc.*, 2018 WL 2452769, at *10 (May 31, 2018) (citing *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010)). If the plaintiff succeeds in making out a prima facie case, a presumption of retaliation arises and the employer must articulate a legitimate, non-retaliatory reason for the action. *Bowen-Hooks*, 13 F. Supp. 3d at 220 (citing *Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010)). If the employer succeeds, the presumption of retaliation dissipates, and the burden shifts back to the plaintiff to show that *but for* the protected

activity she would not have been terminated. *Bowen-Hooks*, 13 F. Supp. 3d at 220–21 (citing *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 228, 362 (2013)).

      b. The Motion for Summary Judgment is Granted as to the Third Cause of Action: The NYSHRL Claims

          i. Age and National Origin Discrimination Claim

As stated above, age and national original discrimination claims are analyzed using the same *McDonnel Douglas* framework as ADEA and Title VII claims. Plaintiff's allegations concerning discrimination toward her are the same for both her federal and state claims. (*See* Mem. in Opp. at 5–9; Compl. at 6–8.) Given that the Court has already granted summary judgment on Plaintiff's federal discrimination claims, the Court finds that Target is also entitled to summary judgment on Plaintiff's NYSHRL claims in light of Plaintiff's failure to make out a prima facie case of either age or national origin discrimination.

          ii. Retaliation Claim

Turning to Plaintiff's retaliation claim, she has failed to make out the first element of a prima facie case as she did not engage in a protected activity. To engage in a protected activity, a plaintiff must actually *oppose a forbidden practice* as clearly laid out in N.Y. Exec. Law § 296(7). Here, Plaintiff first spoke to a supervisor in Human Resources about seeking additional hours. (Mem. in Opp. at 14.). She then complained to the store manager about Defendant Martinez calling her "crazy." (*Id.*) Finally, she called the employee's Integrity Hotline to report that Defendant Martinez called her "crazy" and that her hours were cut after she complained about the comment while other employees' hours were increased. (Def.'s R. 56.1 Stmt. ¶ 54.) On the same call, Plaintiff also expressed that she was the only one being scheduled to work at night. (*Id.*) Neither Plaintiff nor Target alleges that Plaintiff said anything during any of these conversations about age or national origin discrimination. In Plaintiff's Memorandum in

Opposition, counsel only states that Plaintiff "used the employee's Hot Line to report continued harassment" but does not elaborate on what constituted the harassment. (Mem. in Opp. at 14.) Plaintiff's Rule 56.1 Statement only provides that she called the Target Hotline and was consequently given more hours. (P.'s R. 56.1 Stmt. ¶ ee (counsel does not cite to any evidence in support of this assertion, in violation of Local Civ. R. 56.1(d)).) Delving into Plaintiff's deposition, she said when she called the hotline that she told the operator: "my supervisor didn't treat me well." (Transcript of Deposition at 149, 17:18, Ex. 1 to Mem. in Supp. [DE 30-2].) When Target's counsel asked Plaintiff directly if she had brought up discrimination on the basis of her age or national origin, she replied that she did not remember. (*Id.* at 159–60.)

Looking at the Complaint, Plaintiff only suggests that she "became upset about the comment made by Martinez" calling Plaintiff "crazy," and that "Martinez observed her being upset and thereafter when Plaintiff went to a [sic] store manager John and thereafter to Human Resources, Ms. Martinez retaliated by reducing her hours in comparison to the hours of other employees[.]" (Compl. ¶ 11.) The Court interprets this to mean that Plaintiff belives Defendant Martinez was retaliating against her for complaining about the "crazy" comment. As discussed above, the "crazy" comment bore no relation to her age or her national origin and therefore does not consist of a "forbidden practice." Since Plaintiff does not allege a "forbidden practice"—or that she opposed such forbidden practice—she did not engaged in a protected activity. Therefore, she cannot make out the first element of a prima facie case of retaliation. While Plaintiff's burden at this stage is minimal, she has not met it here. Therefore, the Court grants summary judgment as to Plaintiff's claim for retaliation under the NYSHRL.[1]

---

[1] Even if Plaintiff had made it past the first element of a prima facie case, she would confront the same issue discussed above regarding whether there was an adverse employment action.

II. *Hostile Work Environment – The Fourth Cause of Action*

a. Legal Standard

The Supreme Court has held that the ban on discrimination in the "terms, conditions, or privileges of employment" under Title VII "evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)) (internal quotation marks omitted). A workplace is hostile, and thereby violates Title VII, when "the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (internal quotation marks omitted.)

To establish a claim for a hostile work environment, a plaintiff must show "that the complained of conduct: (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of . . . [a] protected characteristic." *Russo v. New York Presbyterian Hospital*, 972 F. Supp. 2d 429, 446 (E.D.N.Y. 2013) (quoting *Robinson v. Harvard Protection Services*, 495 Fed. Appx. 140, 141 (2d Cir. 2012) (internal quotation marks omitted).) "In determining whether an actionable hostile work environment claim exists, [courts] look to 'all the circumstances,' including 'the frequency of discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002) *superseded in non-relevant part by statute* (quoting *Harris*, 510 U.S. at 23.)

Finally, to hold an employer liable for hostile actions taken by an employee, the plaintiff must establish that the hostile work environment can be imputed to the employer. *Russo*, 972 F. Supp. 2d at 447 (citing *Vance v. Ball State Univ.*, 570 U.S. 421, 430 (2013).

      b. The Motion for Summary Judgment is Granted as to the Fourth Cause of Action: The Hostile Work Environment Claim

Applying the foregoing principles to the facts at bar, Plaintiff fails to make a prima facie case of a hostile work environment. Looking at the first element, the complained-of conduct is not objectively severe or pervasive—nor was there an environment that that a reasonable person would find hostile or abusive. *See Russo*, 972 F. Supp. 2d at 446. The Court has combed through the Complaint, the Memorandum in Opposition, Plaintiff's Rule 56.1 Statement, and Target's filings to aggregate all of the disparate complained-of conduct in the record. The entirety of this conduct consists of:

(1) Defendant Martinez's one offensive comment that Plaintiff was "crazy;"

(2) Defendant Martinez's favoritism of younger workers evidenced by her accommodating their schedules in assigning shifts;

(3) Defendant Martinez embarrassing Plaintiff on one occasion by showing her how to pick up items in front of another employee;

(4) Defendant Martinez assigning Plaintiff too much work to complete in a given timeframe on one specific occasion;

(5) Defendant Martinez telling Plaintiff she was not to discuss her financial problems with her coworkers; and

(6) Defendant Martinez giving Plaintiff fewer hours than Plaintiff wanted, and scheduling Plaintiff to work later shifts. (*See, e.g.*, Compl. ¶¶ 9–13; Mem. in Opp. at 1–3; P.'s R. 56.1 Stmt. ¶¶ n et seq.)

In summary, there are two comments at issue, two specific instances of conduct, and generalized frustrations about insufficient hours and a less desirable work schedule.

While Defendant Martinez's alleged actions were unprofessional, and understandably upsetting to Plaintiff, they do not raise to the level of "severe" or "pervasive."  Looking at the frequency of the conduct, each of the cited comments only happened one time, the embarrassing demonstration happened one time, and there is only one example in the record of an assignment of excessive work.  None of the conduct is "severe," as it was not physically threatening or humiliating.  In fact, most of the instances were "a mere offensive utterance."  *See National R.R. Passenger Corp.*, 536 U.S. at 117.  While Plaintiff may claim that the conduct "unreasonably interfered" with her performance, this argument would be unavailing because the isolated and infrequent instances were not pervasive enough to impact her ability to do her job.  *See Petyan v. New York City Law Dept.*, 2015 WL 4104841, at *3 (S.D.N.Y. July 2, 2015) (holding that plaintiff's hostile work environment failed as a matter of law when plaintiff "failed to sufficiently allege that he suffered from a hostile work environment" because the isolated incidents of hostile remarks did not mean his workplace was "permeated with discriminatory intimidation, ridicule, and insult.")  Therefore, Plaintiff cannot make out the first element of a hostile work environment claim as the conduct here was neither pervasive nor severe, and a reasonable person would not have found the isolated hostile remarks and unfavorable schedule constituted a hostile or abusive environment.

The Court will not consider whether Plaintiff can make out the other elements of a hostile work environment claim as it would be an academic endeavor.  However, the Court will note that under the third element of the prima facie showing, Plaintiff must demonstrate that the hostile work environment arose because of her membership in a protected class.  *Russo*, 972 F. Supp. 2d

at 447 (citing *Vance v. Ball State Univ.*, 570 U.S. 421, 430 (2013). Based on Plaintiff's inability to allege any claims tying Defendants' conduct to discrimination based on her age or national origin, it is unlikely that she could prevail on this element. Accordingly, the Court grants summary judgment as to the fourth and final cause of action.

## SERVICE AS TO DEFENDANT MARTINEZ

In reviewing the docket, the Court has determined that there has been no service on Defendant Martinez. Accordingly, Plaintiff is ordered to show cause by writing filed on or before June 21, 2018, why this action should not be dismissed for failure to serve a defendant in accordance with Fed. R. Civ. P. 4(m).

## CONCLUSION

For the foregoing reasons, Defendant Target's motion for summary judgment is granted in its entirety as there are no outstanding issues of material fact and Plaintiff has failed to make out a prima facie case for any of her four causes of action. The Clerk of Court is directed to terminate Defendant Target as a party. Furthermore, Plaintiff is ordered to show cause by writing filed on or before June 21, 2018, why this action should not be dismissed for failure to serve Defendant Martinez in accordance with Fed. R. Civ. P. 4(m).

**SO ORDERED.**
Dated: Central Islip, New York
       June 12, 2018

                                                  /s/
                                           Denis R. Hurley
                                           Unites States District Judge